UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20160-cr-WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEONEL RIVERO,

    Defendant.
_____/

**SENTENCING MEMORANDUM/RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

Defendant, LEONEL RIVERO, hereby files his Sentencing Memorandum, response to the government's sentencing memorandum and asks this Court to consider varying downward from the advisory guideline range. In support of this request, Rivero states as follows:

Should this Court grant Rivero's PSI objections, his advisory guideline range is 24 to 30 months. However, the law is well-settled that sentencing does not end with a guideline calculation. Once an advisory guideline is calculated, this Court must consider the factors set forth in Title 18 U.S.C. § 3553 when fashioning an appropriate sentence in this case. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). While § 3553 sets forth a wide range of factors that must be evaluated, this Court may weigh some factors more heavily than others. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).

While Probation determined that Rivero is not eligible for a minor role adjustment, nothing prohibits this Court from considering some of the same factors that would have

applied when determining an appropriate sentence in this case. *United States v. Moran, 778 F.3d 942*, 983 (11th Cir. 2015)("[T]he district court, in imposing a variance, may consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range"). In this regard, the Commentary to U.S.S.G. § 3B1.2 provides:

> <Likewise, a defendant who is accountable under § 1B1.3 for a loss amount under § 2B1.1 (Theft, Property Destruction, and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline. For example, a defendant in a health care fraud scheme, whose participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount, may receive an adjustment under this guideline.>

Application Note 3(A). It goes on to explain that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." Application Note 3( C). "The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." Application Note 3( C).

Despite the government's claim to the contrary, Rivero's conduct certainly fits. Rivero *is not* a corrupt tax preparer as the government alleges. Nor does Rivero have any background in loan processing or the functioning of the SBA. His clients sought PPP loans which he helped prepare. Those loan applications sought a total of $2,334,064 for which Rivero is being held *fully* accountable under the guidelines. However, Rivero was paid by the applicants a fee to perform a task - - prepare the loan application - - nothing more. While those applicants directly received thousands of dollars, 47 were funded for approximately $900K, Rivero received approximately $500 - $700 for each application that

was funded. That means Rivero was paid approximately $31,000 of the more than $2 million in loan applications. (He has also forfeited $975,000 and is solely on the hook for more than a million in restitution as it does not appear anyone else is being prosecuted). In other words, Rivero is being held accountable for an amount which *substantially* exceeds his personal gain. A reasonable sentence should account for this disparity regardless of Rivero's status as a tax preparer as this is not a tax fraud case.

Rivero acknowledges that he mishandled these applications but the government's argument that he was the mastermind is a step too far.[1] Rivero did not steal identities, or sign and submit applications for unwitting individuals. On the contrary, each person whose *corporation* received money swore to the application's accuracy. After swearing to the application each (and not Rivero) received the loan proceeds, funded directly to his/her bank account. It is hard to imagine that the loan recipients were victims as the government suggests. Notably, it does not appear that any one of the 47 loan recipients have offered to return the money they were allegedly surprised to have received.

Moreover, the government's argument that Rivero is deserving of a greater punishment because he has a history of fraud is completely baseless. Rivero was audited and paid a civil penalty for not having the back-up documentation for tax returns he prepared. Rivero *never* acknowledged that he submitted false tax information nor were the tax returns false or fraudulent. He has no criminal history because he did not commit a

---

[1] The government's citation to *United States v. Maurival*, 848 Fed. Appx. 397, 400 (11th Cir. 2021) is misleading as it was not the filers that Maurival guided. Rather, his role was enhanced (after trial) because he provided the means, his filing identification number, to his tax preparer co-conspirators to file false tax returns. And, Maurival controlled and distributed the proceeds of the scheme to his co-conspirators from his bank account.

crime. Period. The argument that he somehow got away with it and that he should now be held accountable must be ignored.

As should the argument that Rivero is deserving of a greater punishment because he submitted forgiveness applications after being visited by the IRS. There is no evidence that the loans were not used for the purposes listed on the forgiveness applications (i.e. that the forgiveness applications were fraudulent). Indeed, if the forgiveness applications contained false information it would contradict the government's claim that the loan recipients did not have any knowledge of the inaccuracies in their loan applications in the first place. They (not Rivero) would have had to swear that they used the loan proceeds that were deposited into their bank accounts for the purposes claimed in the forgiveness applications. Put simply, Rivero performed a task for applicants who benefitted substantially more than he did and, accordingly, his sentence should be less than the advisory guideline range as a result.

In terms of what that sentence should be, Rivero also believes this Court should be guided by the sentences of others who have been convicted of fraud in connection with the PPP loan program. For example, in *United States v. Walker*, Case No. 20-60159 (S.D. Fla.), the defendant used her medical billing services company to apply for a PPP loan in which she swore falsely that her business had 12 employees. She received $258,575 in loan proceeds out of which she paid two co-conspirators a total of $100K, meaning she profited more than $150K. The defendant's offense level was calculated at 15 with a range of 18 to 24 months. She sought a two-level minor role reduction which the government opposed. She was sentenced to 12 months and 1 day. Rivero did not gain anywhere near $150K for the loan applications he prepared.

In *United States v. Andre Clark*, Case No. 21-60029-cr-WPD (S.D. Fla.), the defendant applied for and obtained a PPP loan in the amount of $488,565. He also referred a number of other conspirators to the scheme resulting in an intended loss of $7,263,564 for which the defendant received a fee. The guidelines were calculated at a level 21 with a range of 37 to 46 months. The defendant asked for a two to four-level reduction for his role while the government sought a sentence of 41 months. The defendant, who (again) personally received $488K, as well as kickbacks, and was accountable for more than $7 million in loans (which appear to have been funded), was sentenced to 33 months. Certainly, Rivero should not receive a greater sentence than a defendant who personally gained nearly $500K and whose intended loss was 3 times the amount.

Rivero is remorseful. He accepted responsibility for his actions demonstrated not only by his plea to a criminal complaint but his forfeiture of the cash seized from his home and money seized from his bank account. Neither were the proceeds of the PPP loans that were paid directly to the loan applicants. He is still on the hook for restitution meaning he will be out of pocket twice the amount of the funded loans when he gained substantially less. And, this will be the case because it appears he is the only one facing prosecution for these loans. Rivero is a young man whose life is forever changed. He will be affected by this conviction long after a prison term is over. Thus, a 38 month prison term will serve no purpose but to punish Rivero harshly for preparing loan applications while the recipients enjoy the proceeds without repercussion.

WHEREFORE, Rivero requests this Court consider these and any other factors argued at the hearing when fashioning an appropriate sentence in this case.

Respectfully submitted,

*/s/ Michael Mirer*
**MICHAEL MIRER, ESQ.**
100 N. Biscayne Blvd.
Suite 1300
Miami, Florida 33130
Telephone: (305) 536-6177
Facsimile: (305) 536-6179
E-mail: michael@mirerlaw.com
Florida Bar No. 119490

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically this 16th day of November, 2021.

*/s/ Michael Mirer*
**MICHAEL MIRER, ESQ.**